UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                              Case No. 10-CR-273

STEVEN J. NIGG,

        Defendant.

---

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

---

Steven Nigg was convicted of possession of a firearm as a felon under the Armed Career Criminal Act (ACCA) 18 U.S.C. § 924(e)(1). Nigg's three ACCA predicates were Arizona armed robberies that he committed during a brief crime spree in 1976 when he was 21 years' old. PSR ¶¶ 10, 22, 35-36. On June 6, 2011, the Court sentenced Nigg to the mandatory minimum term of 15 years in the custody of the Bureau of Prisons. Nigg's sentence was affirmed in *United States v Nigg*, 667 F.3d 929 (7th Cir 2012). The case is now before the Court on Nigg's motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). Nigg is currently serving his prison sentence at the low security Federal Correctional Institution (FCI) at Beaumont, Texas  His current release date is December 2, 2023, and his home release detention eligibility date is June 2, 2023. After accounting for good conduct time received, this means that Nigg has served close to 80% of his sentence.

As a threshold matter, the Government argues that Nigg's motion should be denied because he failed to properly exhaust his administrative remedies. Under the First Step Act, the Court may grant a defendant's motion to reduce a sentence for extraordinary and compelling reasons, but only

after the earlier of either the failure of the BOP to bring a motion on the defendant's behalf following full exhaustion of those remedies, or "the lapse of 30 days from the receipt of such request by the warden of the defendant's facility." § 3582(c)(1)(A). Though not jurisdictional, the Seventh Circuit has recently joined other circuits in holding that the exhaustion requirement is a mandatory claim-processing rule that must be enforced when properly invoked. *United States v. Stanford*, No. 20-2445, ___ F.3d ____ (7th Cir. Jan. 25, 2021). In this case, the Government asserts that Nigg did not fully exhaust his administrative remedies and failed to properly submit his request to the warden of the facility where he is presently serving his sentence.

Although Nigg filed a request for compassionate release, the Government argues that he never submitted his request to the warden as required under 28 C.F.R. § 571.62(a)(1). Instead, the Government contends that Nigg requested informal resolution under 28 C.F.R. § 542.13. It is clear, however, that Nigg attempted in good faith to present his request to the Warden. He explicitly wrote in the document he submitted, "This is my formal request to Warden Garrido for expedited review for compassionate release pursuant to 28 C.F.R. § 571.62(c) and title 18 U.S.C. § 3582(c), as amended by Congress under the First Step Act (FSA), Pub. L. No. 115-391,132 Stat. 5194 at § 603(b)(1) (Dec. 2018), or in the alternative, for release to home confinement pursuant to the CARES Act, section 12003, which authorizes the BOP to lengthen the maximum amount of time for which to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, as the BOP Director deems appropriate." Dkt. No. 45-1 at 4. Nigg went on to specifically cite the public health emergency created by the COVID-19 pandemic and the factors he believed placed him at serious risk of death if he were to contract the virus. Moreover, in response to Nigg's request, his Unit Manager informed him that Health Services had not identified him as an at-risk inmate. The unit manager further advised Nigg that he did not meet the criterial

2

for being released to home confinement based upon his incident report history within the past 12 month, in which he was found guilty of an assault charge, as well as his previous history of violence. Dkt. No. 45-1 at 3.

The Court finds Nigg's efforts constitute at least substantial compliance with the mandatory claim-processing procedure required under § 3582(c). Although the Government contends Nigg failed to use the proper form, it offers no evidence that he was properly instructed on which form to use or that anyone ever attempted to correct his mistake. His request for compassionate release was explicitly intended for the warden's attention. The fact that it may have been improperly processed would seem to be the fault of the institution, not Nigg. The Court will therefore proceed to the merits.

Nigg argues that his sentence should be reduced to time served because he is at risk of death or serious health consequences due to the current pandemic. He contends that his age (65), along with his chronic health conditions (asthma and history of traumatic lung injury), place him in the category of inmates likely to suffer severe consequences should he contract the virus.

The difficulty with Nigg's argument is that he appears to be in relatively good health. The record does not support his claim that his health conditions place him at high risk of death or serious health consequences should he contract the virus. Absent special vulnerability, most people recover fully from COVID-19 in a reasonably short period of time. Only the elderly and those with serious comorbidities, such as diabetes, obesity, COPD, hypertension, coronary artery disease, are at substantial risk. According to the Center for Disease Control, a person of Nigg's age is five times more likely than a person age 18 to 29 to die or require hospitalization if he contracts COVID-19. https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-recautions/older-adults.html. The CDC also states that the risk of hospitalization or death may also increase in

3

persons of any age who have moderate to severe asthma, or damaged or scarred lung tissue. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Given that the risk for younger healthy people of dying or requiring hospitalization as a result of contracting COVID-19 is exceedingly low, the risk for a person of Nigg's age and medical condition is not great.

In support of his motion, Nigg filed a letter addressed "To Whom it May Concern" from Kathie Bollenbach, a Physician Assistant who served as the medical director of Northern Health Centers from 1989 to 2013. Bollenbach, who saw Nigg as a patient prior to his current incarceration, not only has thirty years of experience as a Physician Assistant, but also has a Masters degree in Medical Science with a history of research and shared publications in lung function and the intra-alveolar cells in lung tissue. Bollenbach is currently working in Emergency/Trauma Medicine in Edentine, North Carolina. In her letter, Bollenbach states that she examined Nigg prior to his sentence in the early 1990's as part of a routine physical examination. Bollenbach states that Nigg had scars that were the result of multiple stab wounds to his chest that occurred while he was in prison in 1981. The stab wounds punctured both of his lungs, resulting in traumatic pneumothoraxes, i.e., lung collapses. The pneumothoraxes were surgically repaired, leaving scar tissue that Bollenbach opines would make him significantly more susceptible to serious consequences should he contract COVID-19. Dkt. No 45-1 at 6–7. Bollenbach believes that the trauma he sustained during his previous sentence, together with the asthma he's had since childhood have left Nigg with compromised lungs. From her experience working with COVID-19 patients on a daily basis, Bollenbach believes that Nigg's risk factors place him in a high-risk category making it more likely that he would suffer serious complication, even death, if he contracts the illness. Nigg argues that, because the conditions inside a prison

4

make it difficult to prevent the spread of a virus as contagious as COVID-19, he should be granted a reduction in his sentence to time served.

But as the Government points out, there is little basis on which to assess the veracity of Bollenbach's letter. She did not submit it as a sworn declaration or affidavit. It appears to have been written from memory of an examination from a routine physical examination almost thirty years ago, with no mention of any more recent medical records. Ms. Bollenbach does not refer to any lung capacity evaluation and provides no assessment of the severity of Nigg's asthma. It is unaccompanied by any reference to test results or clinical observations concerning Nigg's lung function. Because of these deficiencies, the letter is entitled to little weight. By contrast, the Health Services Unit at Beaumont reviewed Nigg's most recent BOP medical records and concluded he was not in the high risk category. Dkt. No. 45-1 at 3.

Beaumont Low FCI in Texas currently has 13 inmates and 2 staff members who have tested positive for COVID-19. Over the past year, 1145 inmates and 22 staff members have recovered from the virus. One inmate has died. https://www.bop.gov/coronavirus (last visited 2/1/21). In addition, the Government, in opposing Nigg's request, notes the extensive steps that the Bureau of Prisons has taken to ensure that the disease does not spread within the institution. *See* Updates to Bureau of Prisons COVID-19 Action Plan: Inmate Movement (March 19, 2020) available at: https://www.bop.gov/resources/news/20200319_covid19_update.jsp. Since April of 2020, the Bureau of Prisons has implemented Phase 5 of the Action Plan which currently governs operations. The current Operation Plan severely restricts inmate and staff movement and gatherings. New inmates are screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with a risk of exposure are placed in quarantine for a minimum of 14 days, or until cleared by medical staff. Taken together, the Government argues that the measures implemented by the

Bureau of Prisons sharply mitigates the risk of COVID transmissions in a Bureau of Prisons institution and, with the development of vaccines, that risk is sure to be mitigated further.

Based on the foregoing, the Court is unconvinced that Nigg has shown the extraordinary and compelling reasons needed to reduce his sentence. The simple fact is that, despite the Court's concern that the sentence required by law was substantially longer than either the nature and seriousness of the offense or the history and character of the defendant required, *see* Dkt. No. 23, Nigg is a relatively healthy person to whom COVID-19 would seem to pose no extraordinary risk. The mitigation steps taken by the BOP and the medical care provided are sufficient to minimize the risk of death or serious complications from the virus. His motion for compassionate release is, therefore, denied.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of February, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge